IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LORENZO RAMOS,**

       **Plaintiff,**

**vs.**                                                                                                     **Civ. No. 04-454 RHS**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

    1.  THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision ("Motion") filed November 9, 2004 **[Doc. 13]**. Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for a period of disability, disability insurance benefits and supplemental security income benefits. Plaintiff alleges a disability which commenced October 15, 1999 due to high blood pressure, depression and chronic headaches. (Transcript of Administrative Proceedings ("Tr.") 56.) On January 25, 2001, at a hearing before the Commissioner's Administrative Law Judge ("ALJ"), Plaintiff indicated that the most significant problems preventing him from working were back and leg pain and depression. (Tr. 233-34.)

    2.  Plaintiff filed an application for benefits on December 13, 1999. (Tr. 45.) After conducting an administrative hearing, the ALJ issued a partially favorable decision[1] on June 7, 2001. (Tr. 15-24.) On March 25, 2004, the Appeals Council denied Plaintiff's request for a

---

[1] The ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act ("Act") during the period of October 15, 1999 through March 4, 2001, but has been under a disability since March 5, 2001. (Tr. 15-24.)

review, thus rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 6.)  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. § 405(g).

3. Plaintiff's date of birth is July 9, 1964.  (Tr. 51.)  Plaintiff has an eighth grade education and has worked in the past as a truck driver, handyman, farmer, tractor driver, farm labor contractor and forklift driver.  (Tr. 62, 71.)  The ALJ concluded that Plaintiff was not disabled during the time period at issue because he did "not establish[] that his impairments prevented him from performing substantial gainful activity existing in significant numbers in the local or national economies prior to March 5, 2001."  (Tr. 22.)

4. The standard of review in social security appeals is whether the Commissioner applied the correct legal standards and whether the final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).  The Court cannot weigh the evidence or substitute its discretion for that of the Commissioner, but has the duty to carefully consider the entire record and make its determination on the record as a whole.  Dollar v. Bowen, 821 F.2d 530, 532 (10th Cir.1987).

5. Plaintiff alleges the following errors:  (1) The ALJ disregarded the opinion of Dr. Mark Whitehead that Plaintiff had been mentally disabled for six (6) or seven (7) years; (2) The ALJ improperly impugned Plaintiff's credibility; and (3) The ALJ erred in applying the Medical-Vocational Guidelines ("Grids").

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson, 987 F.2d at 1486 (citing 42 U.S.C. §423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A).  Social Security

Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

7.  At the first four levels of the evaluation, the claimant must show:  (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past.  At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than past relevant work.  Thompson, 987 F.2d at 1487 (citations omitted).  Here, the ALJ determined that Plaintiff was not disabled during the relevant time period at step five of the sequential process.

8.  At step one, the ALJ found "no evidence that the [Plaintiff] has engaged in substantial gainful activity since [October 15, 1999]."  (Tr. 16.)  At step two, the ALJ determined that Plaintiff's impairments included back disorders and depression.[2]  (Tr. 19.)  However, while the ALJ found that Plaintiff's depression was severe, he concluded that it did not "meet or equal the specific criteria of an impairment listed in Appendix 1, Subpart P, Regulations 404 ["listings"]" during the time frame at issue.  Id.  At step four, the ALJ determined that Plaintiff "was unable to

---

[2]In her response brief, Defendant initially stated that "the ALJ determined at step five that Plaintiff was not disabled." (Response to Plaintiff's Motion ("Response") **[Doc. 17]** at 3.)  In the very next paragraph, however, Defendant inexplicably asserts that the "Plaintiff did not carry his burden of proof at step two." (Id.) Defendant ultimately reached the incorrect conclusion that the ALJ "found that Plaintiff did not have a step two impairment." (Id. at 6.)

perform his past relevant work." (Tr. 21.)  At step five, the ALJ concluded that the Medical Vocational Guidelines ("Grids") "direct[ed] a finding of not disabled."  (Tr. 22.)

### *First Alleged Error - Opinion of Dr. Whitehead*

9. Pursuant to a referral by Disability Determination Services ("DDS"), Plaintiff was examined by psychologist Mark L. Whitehead, Ph. D. on March 5, 2001. (Tr. 212.) Dr. Whitehead diagnosed Plaintiff with severe major depression with psychotic features and found that Plaintiff was "currently disabled by virtue of [the] extreme nature of his psychotic depression." (Tr. 214-15.) Dr. Whitehead further opined that Plaintiff "has been in this state for six (6) or seven (7) years and [] may be habituated into [] helplessness."  (Tr. 215.)

10. The ALJ relied on Dr. Whitehead's opinion to some extent in concluding that Plaintiff was disabled as of March 5, 2001. (See Tr. 22 (referring to Dr. Whitehead's report in finding that Plaintiff's depression met the listing criteria as of March 5, 2001).) Thus, the ALJ apparently found that Dr. Whitehead's report was evidence that Plaintiff's depression deteriorated from a non-disabling impairment to a disability of listing severity on March 5, 2001.  However, the ALJ did not mention or discuss Dr. Whitehead's opinion that Plaintiff had been in this state for several years.

11. Plaintiff contends that the ALJ improperly disregarded Dr. Whitehead's retrospective opinion concerning his condition.  Although a treating physician may make a retrospective diagnosis of a condition, "a retrospective diagnosis without evidence of actual disability is insufficient."  Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995).  "In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment

severity." SSR 83-20, 1983 WL 31249, at *2.  In this case, there is evidence from the relevant time period that is arguably consistent with Dr. Whitehead's retrospective opinion.[3]  See Birnell v. Apfel, 45 F.Supp.2d 826, 837 (D.Kan. 1999) (explaining that other record evidence combined with a retrospective diagnosis may provide the necessary support for a finding of disability). Moreover, there are indications that the Commissioner may not have obtained reports of a treating psychiatrist from the relevant time frame, necessitating further development of the record. See infra ¶ 18.  Consequently, I cannot dismiss Dr. Whitehead's retrospective opinion on the ground that the record lacks evidence of an actual disability prior to March 5, 2001.

    12.  Defendant contends that Dr. Whitehead did not examine Plaintiff's past medical records and based his retrospective opinion on "Plaintiff's subjective complaints." (Response at 4.)  Dr. Whitehead stated that his report was based on information "provided by Mr. Ramos and the information forwarded by DDS." (Tr. 212 (emphasis added).)  Dr. Whitehead did not describe the material provided by DDS.  Nor did Dr. Whitehead specifically identify the

---

[3]For example:  (1) the Plaintiff had not engaged in substantial gainful activity since October, 15, 1999; (2) records show that Plaintiff had been repeatedly diagnosed with, and treated for, depression, anxiety, and/or panic attacks for several years prior to March 2001 (see, e.g., Tr. 121, 118, 110, 108, 200); (3) in January of 2000, R. Dunnahoo PA-C, ordered a consultation with a psychiatrist requesting evaluation for counseling (Tr. 208); (4) from June of 2000 through January 2001, Plaintiff received counseling through Las Cruces Counseling Services (Tr. 182-90); (5) Plaintiff reported that his depression and anxiety "worsened" after April 17, 2000 and indicated that he was seeing Dr. Flores monthly and a counselor three times a week for depression and anxiety (Tr. 91-92); (6) on October 25, 2000, R. Dunnahoo, PA-C noted that Plaintiff was being treated for "depression, for which his psychiatrist has prescribed multiple medications and therapy" (Tr. 197); (7) in October and December 2000, Dr. J. Iqbal, a neurologist, noted Plaintiff's history of "psychiatric issues" and "psychiatric problems" (Tr. 191, 192); and (8)  Plaintiff's GAF score decreased from 50 to 42 (Tr. 174A, 178, see Lee v. Barnhart, 117 Fed.Appx. 674, 678, 2004 WL 2810224, at **3 (10th Cir. Dec. 8, 2004) (not published in the Federal Reporter) (noting that a low GAF score may "suggest an inability to keep a job") (citations omitted).)

information on which he based his retrospective opinion.  Thus, I cannot conclusively determine that Dr. Whitehead relied solely on Plaintiff's subjective statements.

      13.  Dr. Whitehead is an "acceptable medical source" whose opinion the ALJ must consider and evaluate in making a disability determination.[4]  See 20 C.F.R. § 404.1527.  Although the ALJ is "not bound by findings made by State agency or other program . . . psychologists, . . . the[] [ALJ] may not ignore these opinions and must explain the weight given to the opinions in their decisions."  SSR 96-6p (Policy Interpretation), 1996 WL 374180, at *2.

      14.  While there may have been reasons for disregarding or rejecting Dr. Whitehead's opinion regarding the onset of Plaintiff's disability, the ALJ should have stated what his reasons were.  See Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996) (noting that the ALJ must sufficiently articulate an assessment of the evidence to assure the reviewing court that the ALJ considered important evidence and enable the court to trace the path of the ALJ's reasoning).  The Court may not speculate as to the reasons the ALJ may have disregarded or rejected a medical opinion.  See Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69 (1962) (quotations and citations omitted) (finding that the ALJ's decision must be evaluated solely on the reasons stated in the decision)).

---

[4]Nurse practitioners and physician assistants are not considered "acceptable medical sources" for the purpose of establishing an impairment.  20 C.F.R. § 404.1513(a).  However, they are "other medical sources," whose opinions may be evidence of the severity of a claimant's impairment and how it affects his ability to work.  Id. § 404.1513(d)(1).  Plaintiff incredibly and incorrectly argues that the full faith and credit clause of the United States Constitution mandates that the opinions of nurse practitioners in New Mexico must be treated identically to those of physicians under the social security regulations. (Reply **[Doc. 18]** at 2-3.)

15. Because the ALJ did not address Dr. Whitehead's retrospective opinion regarding the onset of Plaintiff's disability, I am unable to determine whether or how that opinion was considered in the ALJ's decision. Accordingly, this case should be remanded for an evaluation of Dr. Whitehead's retrospective opinion.

*Second Alleged Error - Credibility Assessment*

16. Plaintiff contends that the ALJ erred in finding his allegations of depression and pain not credible. "Credibility determinations are peculiarly the province of the finder of fact and [the Court] will not upset such determinations when supported by substantial evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (cited in McGoffin v. Barnhart, slip op. No. 01-5094 (10th Cir. May 3, 2002)). However, the ALJ's "decision must contain specific reasons for the finding on credibility [and must be] supported by the evidence in the case record." SSR-96-7p; Houston, 838 F.2d at 1133 (noting that credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings").

17. Plaintiff apparently argues that the ALJ's credibility assessment regarding his chest and back pain is flawed because medical tests show abnormalities of his heart and spine. However, the ALJ did not discount Plaintiff's pain allegations based on a lack of objective medical evidence. Rather, the ALJ found, *inter alia*, that "there is little evidence of treatment" for these conditions.[5] (Tr. 20.) Plaintiff does not otherwise challenge the ALJ's credibility assessment regarding his allegations of pain. Accordingly, I find no error in the ALJ's credibility assessment of Plaintiff's allegations of chest and back pain.

---

[5]Plaintiff does not contend that this finding is improper or unsupported.

18. The ALJ also concluded that the evidence did not support Plaintiff's allegations of disabling depression during the relevant time period. One of the reasons the ALJ cited was his finding that "[t]here is little evidence of psychiatric treatment prior to March 5, 2001." (Tr. 20.) Plaintiff contends that this finding is "erroneous" and "completely untrue."[6] (Plaintiff's Memorandum Brief in Support of Motion **[Doc. 14]** at 7; Tr. 20.) Defendant responded to Plaintiff's contention by reiterating that "the evidence showed that Plaintiff had little psychiatric treatment prior to March 5, 2001." (Response at 7.)

19. The ALJ's finding that there is little evidence of psychiatric treatment prior to March 5, 2001 is baffling. As previously noted, the record demonstrates that Plaintiff was repeatedly diagnosed with, and medicated for, depression, anxiety and/or panic attacks for several years prior to March 5, 2001. See also, supra note 4. Defendant does not explain how or why this is not evidence of psychiatric treatment. In addition, while the record indicates that Plaintiff visited a psychiatrist prior to March 5, 2001[7], the psychiatrist's reports do not appear in the record. This apparent failure to obtain the records of a treating psychiatrist further undermines the ALJ's finding. See, e.g., Lee, 117 Fed.Appx. at 679-80, 2004 WL 2810224, at **5 (citing Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996)) ("The ALJ has an affirmative obligation to develop the record by obtaining missing medical records that the claimant brings to his attention."). Thus,

---

[6]Plaintiff raises this challenge in the context of his claim of error regarding Dr. Whitehead's opinion. However, because the disputed finding is one of the bases of the ALJ's credibility assessment, it is more appropriately addressed here.

[7]Alton Patterson, a clinical therapist, indicated that sometime before June 19, 2000, "Dr. Flores . . . [told Plaintiff] to seek counseling for his anger and alcohol usage." (Tr. 178.) Plaintiff stated that he saw Dr. Flores monthly "for depression & anxiety" and visited Dr. Flores in June 2000. (Tr. 92.) At his hearing, Plaintiff indicated that his "psychiatrist, Dr. Florez [sic]" had suggested a sleep test. (Tr. 245.) See also, supra note 4.

the ALJ's finding that the record shows little evidence of psychiatric treatment prior to March 5, 2001 is not based on substantial evidence.

20.  The Court does not know how much weight this finding carried in the ALJ's credibility analysis regarding Plaintiff's allegations of depression.  However, a credibility determination based, at least in part, on a questionable interpretation of the evidence is suspect.  Moreover, the credibility determination is particularly important in this case because of its potential impact at step five of the sequential evaluation.  See Thompson, 987 F.2d at 1488 (noting that a significant nonexertional impairment precludes conclusive reliance on the Grids).

21.  In light of the impact of the credibility finding on the use of the Grids at step five, this matter should be remanded for a re-assessment of the Plaintiff's credibility regarding depression.  On remand, the Commissioner should also obtain any missing medical records pertaining to Plaintiff's visits with a psychiatrist.  The Commissioner shall proceed as necessary in light of any new or changed findings resulting from a re-assessment of Plaintiff's credibility and/or further development of the record.

### *Third Alleged Error - Application of the Grids*

22.  Plaintiff contends that the ALJ erred in conclusively applying the Grids.  "As a general rule, the grids may not be used conclusively if the claimant has nonexertional impairments that limit the ability to do the full range of work within a classification."  Lopez v. Barnhart, 78 Fed.Appx. 675, 678, 2003 WL 22351956, at **3 (10th Cir. Oct. 16, 2003) (not published in the Federal Reporter) (citing Thompson, 987 F.2d at 1488).  Moreover, "resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as . . . mental impairments."  Id. at 679, 2003 WL 22351956, at **3 (citing Hargis v. Sullivan, 945 F.2d 1482,

1490 (10th Cir. 1991)). Nevertheless, "the grids may be used to direct a conclusion if the claimant's nonexertional impairments do not significantly reduce the underlying job base." Id., 2003 WL 22351956, at **4 (citing Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995)).

23. Because I find that this matter should be remanded for further proceedings related to evaluation of evidence, assessment of credibility and development of the record, there is no need to specifically address Plaintiff's allegations of error with respect to application of the Grids. On remand, the Commissioner should proceed as necessary, based on any new or changed findings resulting from the evaluation of Dr. Whitehead's opinion, re-assessment of Plaintiff's credibility or a review of additional medical records.

## Conclusion

24. In sum, I find that this case should be remanded for an evaluation of Dr. Whitehead's retrospective opinion and a re-assessment of Plaintiff's credibility. On remand, the Commissioner should further develop the record by obtaining any missing medical records from Plaintiff's psychiatrist. The Commissioner should conduct additional proceedings, as necessary, based on any new or changed findings resulting from the evaluation of Dr. Whitehead's opinion, the re-assessment of Plaintiff's credibility or a review of additional medical records.

**WHEREFORE**,

**IT IS ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision **[Doc. 13]** is GRANTED. This matter is remanded to the Commissioner for additional proceedings consistent with this opinion, to include:

(A) an evaluation of Dr. Whitehead's retrospective opinion;

(B) a re-assessment of Plaintiff's credibility regarding his allegations of depression;

(C)  obtaining medical records from Plaintiff's psychiatrist; and

(D)  additional proceedings, as necessary, based on any new or changed findings resulting from the evaluation of Dr. Whitehead's opinion, the re-assessment of Plaintiff's credibility or a review of additional medical records.

_____Robert Hayes Scott_____
UNITED STATES MAGISTRATE JUDGE